STUART M. GOLDSTEIN, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 6911

November 26, 1973                    516 P.2d 111

*Harry E. Claiborne* and *Annette R. Quintana,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

This appeal is from an interlocutory order of the district court denying a motion to suppress the defendant's oral confession of a homicide given to police officers on November 16, 1970.[1] The main claim of error is that the interrogating officer to whom the defendant orally confessed knew that his father had secured counsel for him, but questioned him in the absence of such counsel in violation of the Sixth Amendment.[2] At the time of interrogation the defendant did not know that counsel had been retained by his father.

The Sixth Amendment provides, among other things, that in all criminal prosecutions, the accused shall have the assistance of counsel for his defense. In Escobedo v. Illinois, 378 U.S. 478 (1964), the United States Supreme Court endeavored to define that right with regard to custodial interrogation. The Court wrote: "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved

---

[1]This appeal was perfected before the repeal of NRS 177.015(1)(b)(2). See: Nev. Stats. ch. 730, at 1489–90 (1973).

[2]We are not here primarily concerned with the Fifth Amendment privilege against self-incrimination since there is substantial evidence to show that the officer, prior to questioning, fully complied with the commands of Miranda v. Arizona, 384 U.S. 436 (1966).

crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogation that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainright, 372 U.S. 335 at 342, 83 S.Ct. 792, 9 L.Ed.2d 799, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The carefully limited holding of Escobedo has received both a narrow and an ample reading by courts called upon to consider it. See footnote 17 to the dissenting opinion of Justice Harlan in Miranda v. Arizona, 384 U.S. 436 (1966), where the cases are collected. Nevada, in line with the weight of case authority, has narrowly construed Escobedo. We have ruled that each of the factors specified in the holding must be present before the doctrine there announced is applicable. Bean v. State, 81 Nev. 25, 29, 398 P.2d 251 (1965); Hall v. Warden, 83 Nev. 446, 452, 434 P.2d 425 (1967). For example, if the suspect did not request the right to consult with counsel the rule of Escobedo is inapposite. Bean v. State, supra; Hall v. Warden, supra; cf. White v. State, 82 Nev. 304, 417 P.2d 592 (1966); Guyette v. State, 84 Nev. 160, 438 P.2d 244 (1968). No such request was made in the case before us.

We do not consider the interrogating officer's knowledge that the suspect's father had retained counsel for him to be the equivalent of a request for counsel by the suspect within the contemplation of Escobedo where the circumstances show that prior to questioning, the suspect was advised of his absolute right to remain silent, that anything he said could be used against him, that he could consult with an attorney and have an attorney present with him during the interrogation, and that if he was indigent a lawyer would be appointed to represent him. In short, we hold that the officer's compliance with the commands of Miranda v. Arizona effectively protected not only the suspect's Fifth Amendment privilege against self-incrimination, but his Sixth Amendment right to counsel as well. Indeed, in Guyette v. State, 84 Nev. 160, 438 P.2d 244 (1968), we held that a suspect's Sixth Amendment right to counsel as defined in Escobedo was protected if he was advised of his absolute right to remain silent, that anything he said

would be used against him, and that he had the right to consult with retained counsel prior to interrogation. Id. at 165. The interrogations in Guyette occurred before Miranda was decided. If the warnings given in Guyette adequately protected the suspect's Sixth Amendment right to counsel as delineated in Escobedo, it follows inevitably that the full Miranda warnings given in the case at hand accomplished the same end.

Although the oral confession of November 16, 1970, also is challenged on the ground that it was coerced, it was permissible for the judge to find otherwise.

Affirmed.

MOWBRAY, BATJER, and ZENOFF, JJ., concur.

GUNDERSON, J., concurring:

In light of prior United States Supreme Court decisions, the investigating officer's actions obviously pose grave constitutional problems. However, for reasons other than those stated by Chief Justice Thompson, I believe such decisions do not absolutely mandate a holding that appellant's confession is inadmissible. Hence, as suppression of appellant's confession might also require the district court to suppress evidence of the victim's death, as "fruit of the poisoned tree," I believe proper judicial restraint requires us to affirm the district court.

Still, I concur separately, because I consider it dubious constitutional doctrine to say that a policeman may interrogate an accused in his counsel's absence, although he well knows the accused has requested and obtained counsel, provided he first recites a "Miranda warning." In the *Miranda* case itself, the U.S. Supreme Court made it clear that as soon as an accused indicates by any means his election to remain silent, or invokes his right to counsel, the police must respect his choice. 384 U.S. at 473–474.

I believe we can affirm the lower court without seeming to approve general use of a doubtful police practice, which may hereafter jeopardize the prosecution of offenses equally as serious as the one here concerned. In the instant case, when appellant was interrogated, investigation had not proceeded beyond "a general inquiry into an unsolved crime," because it was not then even known that anyone was dead. The investigation was, rather, an inquiry to determine if indeed there was a crime to be solved, and therefore not clearly within the purview of prior federal cases.